OPINION OF THE COURT
Norman C. Ryp, J.
A. ISSUE
Whether juvenile, detained for 21 days for failure of New York City agencies to be ready for 20 days is entitled to habeas corpus relief where Family Court Judge adjourns the dispositional hearing an additional 10 days for "special circumstances” under Family Court Act § 350.1 (5), based solely upon juvenile’s absconding a nonsecure detention facility for 13 hours? Yes! An issue of first impression under the 1983 Family Court Act!
B. PROCEDURAL HISTORY AND FACTS
Upon this writ of habeas corpus, petitioner Elizabeth Stuart Calvert, the Law Guardian of Carlos Sepulveda, seeks his release upon the grounds that Family Court Judge Marjory D. Fields improperly adjourned the dispositional hearing beyond the total 20-day period authorized for "good cause” under Family Court Act § 350.1 (5).
The uncontroverted facts follow. On July 6, 1987, Carlos Sepulveda (relator), under 16 years of age, was arrested inside premises 849 Bruckner Boulevard, Bronx, New York, by Police Officer Gwendolyn Guy of the 41st Precinct, Bronx County.
On July 7, 1987, a juvenile delinquency petition, under Family Court Act § 311.1 (docket No. D-5270/87) was filed charging relator with acts which, if an adult, constitute the crimes of: burglary in the second and third degrees (Penal Law §§ 140.25, 140.20), criminal trespass in the second degree (Penal Law § 140.15), possession of burglar’s tools (Penal Law § 140.35) and criminal mischief in the fourth degree (Penal Law § 145.00 [1]). Relator was present, with his father and stepmother, represented by the Legal Aid Society, which entered a denial and objected to his remand until July 10, 1987, by Family Court Judge Rita Bolstad.
On July 10, 1987, relator pleaded guilty to criminal trespass in the second degree (Penal Law § 140.15, a class A misdemeanor) before Judge Fields in full satisfaction of the entire Family Court Act § 311.1 petition. The case was set down for a *333 dispositional hearing on July 20, 1987, with the New York City Probation Department (Probation) directed to investigate and report (I&R) relator’s background and circumstances, as well as explore placement by the adjourned date. In addition, the court’s Mental Health Services (MHS) was ordered to conduct a mental health study and status examination and report to the court by the July 20, 1987 adjourned date. In the interim, relator was remanded to the New York City Commissioner of Juvenile Justice (CJJ), which referred relator to a nonsecure detention (NSD) facility.
At about 11:30 p.m. on July 19, 1986, relator left the NSD facility without permission, returning to his father’s and cousin’s home (same building) the next morning, claiming he spent most of the night outdoors. Relator’s father then telephoned the police department, which returned relator to CJJ in a secure detention facility (Spofford Juvenile Center) and Family Court custody that morning, being the adjourned (July 20, 1987) date.
On July 20, 1987, relator and his father appeared before Family Court Judge Harold J. Lynch (Judge Fields then attending the 1987 judicial seminar in Rochester, New York), receiving reports that the Probation Department had not begun its I&R and MHS had to reschedule its July 15, 1987 examination because CJJ failed to produce relator. Since relator was then detained over 10 days, a "good cause” finding was required under Family Court Act § 350.1 (3) (a). Judge Lynch found such "good cause” over the objections of relator and counsel (petitioner), based upon relator’s absence from court that very morning, which probably prevented the Probation interview. A dispositional hearing was now rescheduled for July 30, 1987, by Judge Lynch ordering, as did Judge Fields on July 10, 1987, the New York City agencies (Probation and MHS) to take the identical actions (I&R and mental health study and status examinations) and make the same reports to the court. According to petitioner, the court "remarked * * * that failure to complete these reports would require the relator’s release on parole on the adjourned date.” Respondent, in opposition, correctly notes nowhere is such noted on the Judge’s July 30, 1987 court endorsement.
On July 30, 1987, relator appeared before Judge Fields, with his father and counsel. Probation was not ready with a final specific recommendation and MHS had not yet, after 20 days and two prior Judges’ orders, interviewed relator. Relator’s counsel then requested parole under Family Court Act § 350.1 *334 (5), which required the "special circumstances” finding to detain relator over 20 days. In response, Judge Fields ruled that relator’s absence from before midnight, July 19, 1987, to noon, July 20, 1987, must be deducted from his net detention period, which then totals 19 days, reordered the MHS study report for the next morning, July 31, 1987, to when the case was adjourned and relator remanded.
On July 31, 1987, relator appeared with his father. The MHS study was completed, but the written report was not ready (until Aug. 5, 1987) and Probation was still not ready with a final recommendation, with placement being explored and divided over relator’s interim status, July 30, 1987 report and Officer McCain recommending parole to parent, while court Liaison Officer Napolitano recommending remand. MHS examining psychologist, Dr. Ronald W. Schiif, then gave an oral report to the court, with the minutes to be furnished counsel on August 3, 1987, indicating relator "loves his father dearly”, but they "don’t get along” and "feels bad about that”; had school "problems with reading and math”, some "prior arrest, but no dispositions”. He stated "his health was good and that he * * * was free of any medical conditions * * * did not use or abuse illicit drugs”. Anticipating release, "[h]is mood was elated * * * while he had no homicidal ideations he mentioned vague suicidal threats should he be sent back to Spofford”, but "these threats impressed as being manipulative, but there is a possibility that he could be a danger to himself although he doesn’t appear to be in immediate danger or need immediate hospitalization”. "[H]e needs a highly structured, closely supervised residential placement outside the New York City area”.
C. PARTIES’ CONTENTIONS AND FAMILY COURT ORDER
For the court to remand relator further (than at least 20 days — July 10-31, 1987), the Judge had to find, on the record, a showing of "special circumstances”, under Family Court Act § 350.1 (5). In support, respondent’s counsel submitted that: (a) relator’s July 19-20, 1987 abscondence from a NSD, unknown to Probation before July 20, 1987, is a factor to be considered; (b) such abscondence is an implicit waiver by relator of his right to a speedy disposition under Family Court Act § 350.1 (1), perceived as his implicit motion to adjourn under Family Court Act § 350.1 (3) (b) up to 30 days; and (c) upon relator’s absence without leave (AWOL), relator’s detention under Fam *335 ily Court Act § 350.1 ended and began anew, restarting the first 10-day period upon remand, thus obviating the "special circumstances” showing.
In opposition, relator’s counsel contended that: (a) Family Court Act § 350.1 (5) allows additional (beyond the 10 plus 10, or total 20 days allowed by Family Ct Act § 350.1 [1], [3] [a]) adjournments only in a "showing, on the record, of special circumstances”, which excludes calendar congestion, the status of the court’s docket or backlog; (b) two prior 1985 cases in Supreme Court, Bronx County, which released respondentrelators (People ex rel. Taylor [Callahan, J.] and Nisbett v Schall [Silver, J.], plus the Practice Commentary by Professor Merril Sobie following Family Ct Act § 350.1 [McKinney’s Cons Laws of NY, Book 29A, Part 1, at 499]) indicate relator’s needs, not aberrational behavior, is the sole criterion; (c) the court found no "special circumstances” for the failure of Probation and MHS to timely furnish the court with the ordered reports; and (d) the court’s finding of "special circumstances” for his AWOL of NSD 12 days earlier for several hours that did not affect Probation or MHS nonreadiness does not justify further remand detention, and relator must be released.
After hearing counsel, the court, on July 31, 1987, found that relator-respondent’s abscondence is special circumstances as defined in Family Court Act § 350.1 (5). If respondent had not absconded from NSD, then the court would be compelled to release him today because there would be no special circumstances, and the failure of having the recommendation would be the fault of Probation and MHS, together or separately, and set August 10, 1987 for the dispositional hearing, with placement to be explored.
D. APPLICABLE LAW
Article 3 — Juvenile Delinquency — Family Court Act (L 1982, ch 920, § 1, eff July 1, 1983), partial successor to the Juvenile Justice Reform Act of 1976 (L 1976, ch 878, eff July 26, 1976) has a dual purpose consideration: rehabilitative and quasi-criminal (see, Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Part 1, Family Ct Act § 301.1, at 266-267). Such is statutorily codified as, "the needs and best interests of the respondent ¡juvenile] as well as the need for protection of the community” (Family Ct Act § 301.1 — Purpose) and, except for a designated felony, consistent therewith *336 the court shall order the least restrictive disposition. Juvenile proceedings are, at the very least, quasi-criminal in nature (Matter of Gregory W., 19 NY2d 55 [1966]) so that juveniles are entitled to the same due process rights as adult defendants (In re Gault, 387 US 1 [1967]; see, Milton, Post-Gault: A New Prospectus for the Juvenile Court, 16 NYLF 57 [1970]).
Family Court Act § 350.1 — Time of dispositional hearing— provides, designated felony act excepted, "the dispositional hearing shall commence not more than ten days” (emphasis added) after the fact-finding determination or order (Family Ct Act § 350.1 [1], [3] [a]). Additional adjournment beyond the above maximum 20 days "shall not be granted in the absence of showing, on the record, of special circumstances”, which "shall not include calendar congestion or the status of the court’s docket or backlog.” (Family Ct Act § 350.1 [5]; emphasis added.)
Similar two-tier ("good cause” and "special circumstances”) adjournment standards are set forth in Family Court Act §§340.1, 748 (juvenile delinquency and PINS). "The prohibition of repeated adjournments is meant to discourage repeated delays by a court or a presentment agency”. (Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Part 1, Family Ct Act § 340.1, at 437.) A sole "good cause” adjournment of hearing criterion is contained in Family Court Act § 325.1 (probable cause), § 533 (paternity), § 626 (termination of parental rights), § 836 (family offenses), and § 1048 (child protective proceeding).
Generally, the Family Court Act seeks fair and prompt dispositions of all proceedings, including juvenile delinquency. According to McKinney’s Practice Commentary, by Professor Merril Sobie, author of Family Court Act article 3, including subject Family Court Act § 350.1 (Book 29A, Part 1, at 495-499), the initial 10-day time frame (reflecting prior Family Ct Act § 749) for a "probation investigation report and other diagnostic assessments”, which "must be available at least five days prior to the dispositional hearing” (Family Ct Act § 351.1 [5]), is an "impossible burden” and "simply unworkable”. Such requires the court "to calendar a hearing only to automatically grant a further ten day adjournment” (id., at 498) totaling 20 days. Professor Sobie, in her Practice Commentary (id., at 498), noting Family Court Act § 350.1 (5), "prohibits successive adjournments in the absence of special circumstances [not including calendar congestion].” Examples of "special circumstances which might justify successive disposi *337 tional hearing adjournments include the necessity for unusually complex psychological and neurological reports or the likelihood of a private placement” (id., at 498-499).
Thus, it is clear from the author of Family Court Act article 3 that the targets of the limited time frame are the court, through calendar congestion, or the presentment agency, through administrative obstacles to final reports by Probation or MHS. In fact, for subsequent adjournments the more rigorous standard of "special circumstance” applies. (People ex rel. Broomfield v Schall, 132 Misc 2d 846, 849 [Sup Ct, Bronx County 1986].)
Especially where the juvenile is in detention (People ex rel. Pratt v Poland, 44 Misc 2d 769 [Sup Ct, Bronx County 1964]), the closest parallel provision to Family Court Act § 350.1 (5), in terms of language and purpose, is contained in the speedy trial provisions of CPL 30.30, wherein delay is excused because of some "exceptional fact or circumstance”. In the absence of a 1984 specific statutory amendment (L 1984, ch 670, eff Aug. 1, 1984), defendant’s absence or unavailability was not excludable grounds for prereadiness trial delay unless the (as distinct from a — one of many) but for cause. (See, People v Cruz, 123 Misc 2d 316 [Sup Ct, NY County 1984], mod on other grounds 111 AD2d 725 [1st Dept 1985], lv denied 66 NY2d 614 [1985].)
In prompt arraignment or release requirements under CPL 180.80, the People are required to show "good cause,” defined as "some compelling fact or circumstance which precluded disposition of the felony complaint” within 120 to 144 hours after filing of the felony complaint (CPL 180.80 [3]; see also, CPL 170.70 for misdemeanors). Recently, United States District Court, Southern District of New York, Chief Judge Constance Baker Motley ruled, stayed pending appeal to the United States Court of Appeals, Second Circuit, that all such arraignments must be completed within 24 hours or defendant released (see, Williams v Ward, — F Supp —, file No. 85 Civ 1045, NYLJ, July 7, 1987, at 1, cols 3-4).
Nowhere contrary to subject Family Court Judge are relator’s or respondent’s acts, such as abscondence, considered "good cause” or "special circumstances” justifying delay and continued remand unless "but for” their nature, quality and duration the presentment agency would have completed its reports to the court. As noted above, the subject Family Court Judge, who created an unnecessary separate issue, found the *338 dispositional recommendation(s) was (were) "not made ready not because the respondent absconded but because Probation and the MHS had not done their piece within the time period. If they had done their piece it would have happened before * * * respondent absconded” because relator’s (respondent’s) appointment was before his July 19-20, 1987 abscondence.
In reviewing Family Court Act parallel references to "special circumstances”, this court has not discovered any authority, except for Professor Sobie’s Practice Commentary for Family Court Act §§ 340.1 and 350.1 and a 1986 decision of this court covering "good cause” in Family Court Act § 350.1 (3) (People ex rel. Broomfield v Schall, 132 Misc 2d 846, supra), analyzing the nature and limited extent of this court’s reasonable discretion on a writ of habeas corpus. While clearly each case contains unique "totality of its special circumstances”, with the following factors, including but not limited to:
(a) the length and reason(s) for the delay beyond the 20-day period under Family Court Act § 350.1 (1), (3); and
(b) the extent of the part(ies) responsible for delay, including court presentment agency, Probation, MHS, any other public agency and juvenile; and
(c) the nature and length of the detention (hospital, NSD, secure facility) and any violation of due process of law or cruel and unusual punishment; and
(d) whether the juvenile’s release will best serve his or her needs and interests plus protect the community (Family Ct Act § 301.1); and/or
(e) there is any danger to the juvenile, his family or the community by the juvenile’s release.
E. CONCLUSION
Applying the above five-pronged test, relator easily surpasses the release level. Relator: (a) was detained 31 days (July 6-Aug. 6, 1987) at the time of hearing because (b) Probation and MHS were unable to substantially progress, much less complete, their respective I&R and study and report after 20 days, although relator was scheduled for interviews on July 15 and 17, 1987 before (c) his abscondence for 13 hours from a NSD and remand to a secure detention facility (Spofford Juvenile Center) in which continued detention, if not punishment, may violate due process of law and constitute cruel and unusual punishment. Since Dr. Schiff testified juvenile is in good physical and mental health, except for possible *339 suicidal threats (not unknown to Spofford Juvenile Center), (d) the juvenile’s release will best serve his needs and interests as well as protect the community and (e) there is little or no danger to the juvenile, his family or the community by relator’s release.
Such shall be effective upon receipt of relator’s father or responsible adult family member (i.e., stepmother or cousin) all residing in relator’s residence building (41 Rogers Place, Bronx, New York) and return to Family Court, Bronx County, Part VIII, Monday morning, August 17, 1987, at 9:30 a.m.
Accordingly, by reason of the foregoing, this writ is sustained.